In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 23-3159

BRIAN ELKINS and ANNIE ELKINS,

*Plaintiffs-Appellees,*

*v.*

SOUTHEASTERN INDIANA HEALTH MANAGEMENT INC., doing business as COLUMBUS REGIONAL HEALTH,

*Defendant-Appellant.*

---

No. 23-3175

KAITLIN LAMARR,

*Plaintiff-Appellee,*

*v.*

GOSHEN HEALTH SYSTEM, INC., d/b/a GOSHEN HEALTH,

*Defendant-Appellant.*

---

No. 23-3363

JENNIFER FLEECE,

*Plaintiff-Appellee,*

*v.*

BOARD OF TRUSTEES OF THE HANCOCK REGIONAL HOSPITAL,

*Defendant-Appellant.*

---

No. 23-3385

KEITH CHIARO and JANE DOE,

*Plaintiffs-Appellees,*

*v.*

METHODIST HOSPITALS, INC.,

*Defendant-Appellant.*

---

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:23-cv-1117 & 1:23-cv-1173 — **James R. Sweeney, II**, *Chief Judge,*
No. 1:23-cv-1235 — **Matthew P. Brookman**, *Judge,*
No. 1:23-cv-1051 — **Sarah Evans Barker**, *Judge.*

---

ARGUED MAY 28, 2024 — DECIDED OCTOBER 20, 2026

---

Before JACKSON-AKIWUMI, LEE, and KOLAR, *Circuit Judges*.

LEE, *Circuit Judge*. Brian and Annie Elkins are patients at Columbus Regional Health ("CRH"),[1] a health system serving ten counties in southeastern Indiana. They allege that a Facebook tracking software called the "Meta Pixel" embedded in CRH's online webpage shared their health data without their consent. The Elkinses brought this putative class action suit in Indiana state court claiming that CRH violated various state laws when it shared their health data. CRH subsequently removed the suit to federal court by invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as the basis for federal jurisdiction. Section 1442(a)(1) gives federal courts subject matter jurisdiction over cases brought against the United States, federal agencies, federal officers, and persons "acting under" a federal officer. 28 U.S.C. § 1442(a)(1). To claim federal jurisdiction, CRH insisted it was "acting under" the Department of Health and Human Services ("HHS") when it created its online patient portals.

The district court rejected CRH's jurisdictional argument and remanded the case to Indiana state court. CRH appealed, and the case was consolidated with four nearly identical lawsuits against health care providers claiming federal jurisdiction under § 1442(a)(1). In each of those cases, the district court had similarly rejected the provider's § 1442(a)(1) jurisdictional argument. Because we agree with the district courts that the health care providers were not "acting under" the

[1] Although the health system does business as Columbus Regional Health, its legal name is Southeastern Indiana Health Management, Inc.

federal government when they created their patient portals, we affirm.

**I. Background**

In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health ("HITECH") Act. *See* Pub. L. No. 111-5, 123 Stat. 264 (Feb. 17, 2009) (codified at 42 U.S.C. § 300jj-11 *et seq*.). To encourage health care providers to adopt health information technology, including the use of electronic health records ("EHRs"), the HITECH Act directed HHS to make incentive payments to any Medicare-participating provider who was a "meaningful EHR user." 42 U.S.C. § 1395w-4(o)(1)(A)(i). Then, starting in 2015, the Act required HHS to reduce Medicare reimbursements to any provider who failed to meet the program's requirements. *Id.* § 1395w-4(a)(7)(A)(i).

The Centers for Medicare and Medicaid Services ("CMS") promulgated regulations to implement the HITECH Act in 2010. Medicare and Medicaid Programs; Electronic Health Record Incentive Program, 75 Fed. Reg. 44,314 (July 28, 2010) (codified at 42 C.F.R. pts. 412, 413, 422, and 495). These regulations created the Meaningful Use Program, which establishes several objectives providers must meet to qualify as "meaningful EHR users" under the HITECH Act and thus avoid the reductions in Medicare reimbursements described above. 42 C.F.R. §§ 495.2–495.370.

One objective directed health care providers to "provide[] patients … with timely electronic access to their health information." *Id.* § 495.24(d)(5)(i)(A). To meet this objective, providers established online patient portals where patients could

access their EHRs and communicate with their health care providers.

In 2023, Brian and Annie Elkins brought this class action suit against CRH, asserting claims for breach of implied contract and unjust enrichment as well as violations of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 (2006), and the Indiana Wiretapping Act, Ind. Code § 35-33.5-5-5 (2014). Defendants timely removed to federal court, asserting federal subject matter jurisdiction pursuant to § 1442(a)(1). To fit within its parameters, the health care providers alleged they were "acting under" the federal government when they created and maintained their patient portals in accordance with CMS's Meaningful Use Program.

The Elkinses moved to remand the suit to state court, and the district court granted their motion. The court concluded CRH was not "acting under" a federal officer when it created its patient portal because, although CRH was highly regulated, its "patient portal is not something the government 'needs.'" It also determined that, unlike the work of certain private government contractors, maintaining private patient EHRs is not a "basic governmental task." CRH appealed.

Before the parties submitted their appellate briefs, they jointly moved to consolidate their appeal with four other appeals also pending before this court pursuant to Federal Rule of Appellate Procedure 27. *See* App. Dkt. 14.[2] Each of the four additional cases brought nearly identical allegations against

[2] The four other appeals are: *Lamarr v. Goshen Health System, Inc.* (23-3175), *Doe v. Sarah Bush Lincoln Health Center* (23-3340) (appeal dismissed), *Fleece v. Board of Trustees of the Hancock Regional Hospital* (23-3363), and *Chiaro v. The Methodist Hospitals, Inc.* (23-3385).

health care providers in Indiana and Illinois. They also presented the same legal question before us here.

We granted the parties' motion to consolidate and instructed them to submit a single appellants' brief, a single appellees' brief, and a single reply brief. *See* App. Dkt. 16. Given that this is a consolidated appeal, our holding applies equally to all four appeals.

**II. Discussion**

We have appellate jurisdiction to review the remand orders pursuant to 28 U.S.C. § 1447(d). *See BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021). "We review subject-matter jurisdiction and the propriety of the removal of a state-court action de novo." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018)). The burden of establishing federal jurisdiction is on the party seeking removal. *Id.*

Removal pursuant to § 1442(a)(1) is appropriate when "the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Id.* (quoting *Betzner*, 910 F.3d at 1015). This case turns on the second element: whether the health care providers were "acting under" the United States, its agencies, or its officers. More specifically, the question for us is whether the providers were "acting under" HHS when they created their online patient portals and accepted federal incentive payments for doing so.

"The words 'acting under' are broad … and the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286

U.S. 510, 517 (1932)). Still, the statute's "broad language is not limitless," and "a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Id.*

As the Supreme Court has observed, the "acting under" relationship "typically involves 'subjection, guidance, or control.'" *Id.* at 151 (quoting Webster's New International Dictionary 2765 (2d ed. 1953)). In addition, "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152.

**A. Cases Interpreting § 1442(a)(1)**

We begin with the Supreme Court's decision in *Watson*. There, consumers brought a class action against cigarette manufacturer Philip Morris alleging the company's advertisements and packaging violated Arkansas's unfair business practice laws. *Id.* at 146. Philip Morris removed the suit to federal court pursuant to § 1442(a)(1), claiming it "acted under" the Federal Trade Commission ("FTC") based on the FTC's "detailed supervision of the cigarette testing process." *Id.* at 147. The Supreme Court rejected this argument, explaining that "acting under" the federal government "does not include simply complying with the law." *Id.* at 152. "[T]hough we find considerable regulatory detail and supervision," the Court continued, "we can find nothing that warrants treating the FTC/Philip Morris relationship as distinct from the usual regulator/regulated relationship." *Id.* at 157.

Philip Morris's regulatory relationship with the FTC was different, the Supreme Court explained, from that of a private contractor that "help[s] the Government to produce an item that it needs." *Id.* at 153. This is because, in such instances, a private contractor "goes beyond simple compliance with the

law and helps officers fulfill other basic governmental tasks." *Id.* For example, a chemical company that produced Agent Orange for the Department of Defense to conduct a war was "acting under" the agency since it was arguably "perform[ing] a job that … the Government itself would have had to perform." *Id.* at 154 (citing *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998)).

We have relied on *Watson*'s reasoning to find federal jurisdiction in several cases where the removing party contracted with the United States to manufacture goods during wartime. In *Ruppel v. CBS Corporation*, for example, we held that a manufacturer was "acting under" the federal government when it produced turbines for an aircraft carrier according to government specifications. 701 F.3d 1176, 1181 (7th Cir. 2012) ("'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."). Likewise, in *Betzner*, we found that a manufacturer fell under the removal statute when it "contracted to manufacture heavy bomber aircraft for the United States Air Force" and "acted under the military's detailed and ongoing control." 910 F.3d at 1015. Finally, in *Baker*, we concluded the defendant was "acting under" the federal government when it provided the government with raw materials during World War II and manufactured those materials under the government's continuous supervision and according to detailed specifications. 962 F.3d at 943.

By contrast, we have declined to extend federal jurisdiction in cases similar to *Watson* where the conduct at issue was "regulation, not delegation." 551 U.S. at 157. In *Martin v. Petersen Health Operations, LLC*, the estate of a deceased nursing

home resident sued the nursing home for its failure to take adequate precautions during the COVID-19 pandemic. 37 F.4th 1210, 1212 (7th Cir. 2022). To support federal jurisdiction, the nursing home claimed it was "acting under" a federal officer in accordance with § 1442(a)(1), because it was heavily regulated by the federal government. *Id.* Although we acknowledged that the nursing home was "subject to extensive federal regulation," we observed that "regulation does not turn a private entity into a public actor." *Id.* at 1212–13. We therefore concluded that the nursing home was more akin to the cigarette manufacturers in *Watson*—highly regulated but not "acting under" an officer or agent of the United States pursuant to § 1442(a)(1). *Id.* at 1213.

**B. Application to Defendants**

For much the same reasons, we conclude that the health care providers here did not "act under" an officer or agency of the federal government when they created their patient health portals. Like the cigarette manufacturer in *Watson* and the nursing home in *Martin*, the health care providers merely complied with federal regulations when establishing and maintaining their patient portals. And, even though an entity may be "subject to extensive federal regulation," such regulation "does not turn a private entity into a public actor." *Martin*, 37 F.4th at 1212–13.

Defendants insist that their relationship with the federal government went beyond regulation because—unlike in *Watson* or *Martin*—they were completing a "fundamental federal governmental task" by creating patient portals. We disagree. When the health care providers construct and operate their patient portals, they are not doing the government's business. The patient portals are private websites designed by private

actors. Once the patient portals are up and running, it is the providers and their patients who benefit from them most directly—not the federal government.

To be sure, the patient portals advance government policy by making EHRs more accessible. But a private party does not accomplish a basic government task every time it acts in response to a government incentive. Indeed, "[p]rivate firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules." *See Martin*, 37 F.4th at 1213. Regardless of any federal incentive, the patient portals are still private websites built by private health care providers to serve their own patients and staff.

The health care providers were not "acting under" the federal government for a second reason. To qualify for federal jurisdiction pursuant to § 1442(a)(1), a private entity must have an "unusually close" relationship to a federal superior "involving detailed regulation, monitoring, or supervision." *Watson*, 551 U.S. at 153. This was the case in our military contractor cases. For example, in *Ruppel*, the defendant claimed that it "supplied asbestos under the Navy's direction and in accordance with detailed Navy specifications, the Navy closely controlled the process, and the Navy was aware of asbestos's health hazards." 701 F.3d at 1179. Here, by contrast, Defendants lack the same "unusually close" relationship with the federal government.

Indeed, the Meaningful Use regulations do not provide any details as to *how* Defendants were to maintain their online patient portals. Instead, the relevant version of the regulations only required that they generally "provide patients the ability to view online, download, and transmit their health

information within four days of the information being available to the [eligible professional]." 42 C.F.R. § 495.20(d)(12)(i)(B).

Perhaps recognizing the lack of specificity in the regulations, Defendants point to several lines in the "Patient Engagement Playbook" published by the Office of the National Coordinator for Health Information Technology. But the Playbook is not binding on providers. To the contrary, the Playbook describes itself as merely a "compilation of *tips* and *best practices* … from clinicians and health systems." *See* Off. of the Nat'l Coordinator for Health Info. Tech., *The ONC Patient Engagement Playbook*, HealthIT.gov, https://www.healthit.gov/playbook/pe/ (emphases added). Then, in the Playbook's introduction, it states, "[we] *hope* you'll use [the Playbook] in a way that works for you and your practice." *Id.* (emphasis added).

Such nonbinding recommendations about patient portal development are a far cry from the detailed government specifications typically required to establish the unusually close relationship required for jurisdiction under § 1442(a)(1). *See Betzner*, 910 F.3d at 1015–16 (finding defendant was "acting under" the federal government because it manufactured bomber aircraft "under the detailed and ongoing direction and control of the United States military"); *cf. Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016) (concluding that the relationship between a private marketing agent and the Army National Guard "fell far short of the closely monitored and highly regulated relationship[]" required to establish jurisdiction under § 1442(a)(1)).

In concluding that Defendants cannot satisfy § 1442(a)(1), we join a number of our sister circuits that have reasoned the same. *See, e.g., Doe v. BJC Health Sys.*, 89 F.4th 1037 (8th Cir. 2023) ("The design of private websites is not—and has never

been—a basic *governmental* task."); *Mohr v. Trs. of Univ. of Pa.*, 93 F.4th 100, 105 (3d Cir. 2024) (acknowledging that the provider "does advance the government's policy by operating a patient portal" but concluding that doing so is "mere compliance" with federal law); *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 415 (5th Cir. 2024) ("LCMC's mere compliance with the Meaning[ful] Use regulations does not mean that LCMC acted pursuant to a federal officer's directive."); *Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 917 (9th Cir. 2024) ("[The HITECH] Program's requirements do not show an express delegation of authority to Cedars-Sinai to accomplish a basic governmental task on the National Coordinator's behalf."); *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1196 (10th Cir. 2024) ("[T]he government does not require Integris to use trackers or otherwise control how Integris provides access to EHR. As a result, Integris is not 'acting under' a federal officer."). And we see no reason to disagree with their analysis.

In sum, Defendants were not "acting under" a federal officer or agency when they created their patient portals.[3] The CDC's Meaningful Use regulations may have incentivized them to create online patient portals, but these incentives are "regulation, not delegation." *Watson*, 551 U.S. at 157.

* * *

For the foregoing reasons, the judgments of the district courts are AFFIRMED.

---

[3] Because we hold that Defendants did not act under federal authority when they created their patient portals, we do not reach whether their conduct "relates to" their exercise of federal authority or whether they have a colorable federal defense.